# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
SANDWICH ISLES )
COMMUNICATIONS, INC., et al., )
)
Plaintiffs, )
)
v. )      Civil Action No. 10-02341 (ABJ)
)
NATIONAL EXCHANGE )
CARRIER ASSOCIATION, )
)
Defendant. )
_____)

## MEMORANDUM OPINION

Plaintiffs Sandwich Isles Communications ("SIC"), Gold Ivory LLC ("Gold Ivory"),

Healii Heine, and Harry Johnston bring this action against the National Exchange Carrier

Association ("NECA") alleging claims for breach of contract, violations of the Equal Protection

Clause of the U.S. Constitution, and tortious interference with Gold Ivory's prospective business

opportunities.  NECA moved to dismiss this action for lack of subject matter jurisdiction and for

failure to state a claim upon which relief can be granted.  Since there is a proceeding pending

before the Federal Communications Commission ("FCC") addressing the same matters, the

Court will grant defendant's motion and dismiss this case.

## I.     Background

Defendant NECA is a nonprofit corporation that was formed by the FCC following the

breakup of AT&T to perform certain services on behalf of local telephone companies (local

exchange carriers or "LECs").  *Allnet Commc'n Svc., Inc. v. Nat'l Exch. Carrier Ass'n*, 965 F.2d

1118, 1119 (D.C. Cir. 1992).  *See also* 47 C.F.R. § 69.601 *et seq*.; Compl. ¶¶ 27–31.  NECA

administers the FCC's "access charge" plan by creating revenue pools into which LEC members contribute their revenue, and by making distributions from those pools to reimburse members for their respective costs.  Compl. ¶ 28.  *See also* 47 C.F.R. § 69.601 *et seq.*

Plaintiff SIC was established to provide telephone and broadband service to native Hawaiian home sites located in the Hawaiian Home Lands ("HHL").  Compl. ¶ 1.  In light of the unique geography of Hawaii, its distance from the mainland, and other factors, providing service to the HHL is particularly costly.  *Id.* ¶ 32.  To fulfill its mission, SIC contracted with NECA to participate in its revenue pools, including one known as the Traffic Sensitive Pool ("Pool").  *Id.* ¶¶ 2, 37, 48.  The purpose of the Pool is to enable high-cost LECs to be reimbursed for their network expenses so they can provide telecommunications services to customers in more remote locations at affordable rates.  *Id.* ¶ 2.  SIC and approximately 800 other rural LECs submit their eligible construction and operational costs to the Pool, and NECA compensates them in accordance with FCC rules.  To fund the Pool, SIC and the other rural LECs agree to charge an "access" tariff to other carriers delivering calls to their customers, and they turn those payments over to NECA.  *Id.*

The dispute in this case arose when NECA refused to reimburse SIC for 100% of the lease expenses it incurred in utilizing the Paniolo cable network ("Paniolo") – a submarine and terrestrial fiber optic cable connecting five Hawaiian Islands – to connect its networks on those islands.  *Id.* ¶ 3.  On May 20, 2009, NECA advised SIC that in its view, the lease costs SIC paid for Paniola were not "used and useful" and they would be excluded from the June 16, 2009,

access charge tariff.  As a result, SIC could not recover those costs from the Pool.  *Id.* ¶¶ 4, 61;

Mot. to Dismiss, App. B.[1]

On June 26, 2009, SIC initiated a proceeding before the Wireline Competition Bureau

("WCB") of the FCC in which it sought a declaratory ruling that the Paniola lease costs were

"used and useful," and that NECA was required to accept them in the Pool.  Compl. ¶75; Mot. to

Dismiss, App. C at 1.  On September 29, 2010, the WCB ruled that "some – but not all – of [the

Paniola lease] costs are properly recoverable consistent with Commission rules and precedent."

*See* Mot. to Dismiss, App. A, *In re Sandwich Isles Communications, Inc. Petition for*

*Declaratory Ruling*, Declaratory Ruling, WC Docket No. 09-133, DA 10-1880, slip op. at 1

(Wir. Comp. Bur., rel. Sept. 29, 2010) ("Declaratory Ruling").

> [W]e do not find 100 percent of [SIC]'s lease expenses per se "used and
> useful" and appropriate for inclusion in the NECA pool. Nor do we find
> NECA's determination not to include the lease costs in its pool
> unreasonable as a matter of that entity performing its role in the pooling
> process.

*Id.* at 4.  But the WCB noted that the FCC possessed the "flexibility itself to consider a

variety of equitable factors beyond current and actual usage in evaluating the costs that

are 'used and useful' and appropriate for inclusion in the revenue requirement."  *Id.*

Based on that analysis and relevant Commission precedent, the FCC concluded that 50%

of SIC's lease expenses should be included in the Pool.  *Id.*

Not satisfied with that result, SIC filed a petition for reconsideration of the FCC's

Declaratory Ruling with the WCB on October 29, 2010.  Mot. to Dismiss, App. D ("Petition for

Reconsideration" or "Petition").   Among other arguments, SIC asserted in its Petition that

instead of applying the "used and useful" doctrine, NECA should have applied its Spare Fiber

---

1      NECA did propose to provide SIC with $1.9 million per year.  Declaratory Ruling at 8,
¶18.

C&WF Investment Cost Reporting Guidelines ("Spare Fiber Guidelines" or "SFG") in determining whether SIC's costs should have been included in the Pool. *Id.* at i–iv, 1–12.  Under those Guidelines, SIC argued, NECA would have been required to reimburse SIC in full. *Id.* at iii.

While the Petition for Rehearing was still pending before the FCC, Compl. ¶ 81, SIC, along with plaintiffs Gold Ivory, Healii Heine, and Harry Johnston, brought suit in this Court. Gold Ivory is a corporate affiliate of SIC's parent company.  Compl. ¶ 124.  In 2010, Gold Ivory allegedly filed two applications for $180 million in stimulus grants to develop a public safety broadband network in Hawaii that would have relied on the Paniolo network. *Id.* ¶¶ 125–26. Heine is a native Hawaiian and a customer of SIC, and Johnston is a native Hawaiian homesteader in the HHL who is not currently being served by SIC. *Id.* ¶ 12–13.[2]

In the December 30, 2010 complaint, SIC sued NECA for breach of contract (Count I), for breach of the implied covenant of good faith and fair dealing (Count II), and for violating of the Equal Protection Clause of the Fourteenth Amendment by applying a different standard – the "used and useful" doctrine – to SIC than to other similarly situated rural LECs (Count III). *See id.* ¶¶ 82–108.  SIC, Heine, and Johnston also claim that NECA violated the Equal Protection Clause because the application of the standard will result in a lack of telecommunications services for native Hawaiian customers in the HHL (Count IV). *Id.* ¶¶ 109–122.  Finally, Gold Ivory sued NECA for tortious interference with prospective business advantage (Count V), alleging that its grant applications were unsuccessful because of concerns about the viability of SIC and its network that arose out of NECA's non-payment decision. *Id.* ¶¶ 127–29.

---

2       According to defendant, plaintiffs Heine and Johnston are also employees of SIC, Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem.") at 6, and plaintiffs do not dispute that assertion.

Plaintiffs seek compensatory damages of not less than $160 million for SIC and $180 million for Gold Ivory. *Id*. at 31. They also seek a judgment directing NECA to apply the Spare Fiber Guidelines and to include all of SIC's Paniola lease costs in the Pool. *Id.*

On December 30, 2010, NECA moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that this Court lacks subject matter jurisdiction or, alternatively, that the complaint fails to state a claim upon which relief can be granted.

## II.     Legal Standard

In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc*., 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

When considering a motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibly Int'l Corp*., 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with examination of our jurisdiction."). Because "subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of*

5

*Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

Moreover, unlike when deciding a motion to dismiss under Rule 12(b)(1), the court "is not limited to the allegations of the complaint . . . ." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  *See, e.g.*, *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

### III.    The Court Lacks Jurisdiction

Defendants argue that in essence, plaintiffs are seeking review of an FCC order, and since the court of appeals has exclusive jurisdiction to review final orders of that agency, this Court lacks jurisdiction to hear the case.  The Court agrees.

A.  The court of appeals has exclusive jurisdiction to review final FCC orders.

As an initial matter, the Court notes that the Hobbs Act, 28 U.S.C. § 2342(1),[3] and the Communications Act, 47 U.S.C. § 402(a),[4] only permit judicial review of "final orders."  The pendency of a petition for reconsideration renders the underlying agency action non-final. *United Transportation Union v. ICC*, 871 F.2d 1114, 1116 (D.C. Cir. 1989) ("We think it plain

---

3     28 U.S.C. § 2342 provides: "The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of – (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47."

4     47 U.S.C. § 402(a) provides: "Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28."

that a pending petition for rehearing must render the underlying agency action non-final (and hence unreviewable) with respect to the filing party."); *see also Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) ("Ongoing agency review renders an order nonfinal for purposes of judicial review, and a petition for review of the order is incurably premature."). Thus, "a petition for judicial review filed during the pendency of a request for agency reconsideration will be dismissed for lack of jurisdiction." *Wade v. FCC*, 986 F.2d 1433, 1433 (D.C. Cir. 1993). Here, SIC has appealed the WCB Declaratory Ruling by filing the Petition for Reconsideration. The WCB has not ruled on that Petition, so there can be no dispute that the FCC has not issued a final order for purposes of judicial review.

Once the FCC does issue a final order, it is undeniable that the court of appeals will have exclusive jurisdiction to review it. *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals."); *Media Access Project v. FCC*, 883 F.2d 1063, 1066 (D.C. Cir. 1989) ("[T]here is no dispute that, under 28 U.S.C. § 2342(1), the court of appeals has exclusive jurisdiction over all 'final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47.'").[5]

Plaintiffs contend that this case does not amount to an effort to obtain judicial review of the FCC's Declaratory Ruling because the complaint raises different claims, it includes new

_____

5       The parties agree that plaintiffs were not required to seek redress before the FCC in the first instance.  Therefore, NECA acknowledges that this Court would have had jurisdiction over a challenge to NECA's actions if plaintiffs had filed an action in this court first.  Transcript of Motions Hearing, July 20, 2011 ("Tr.") at 3 ("You would have had the power had they filed it only here.").  But according to NECA, once plaintiffs initiated the FCC proceedings that are still pending, they triggered the Hobbs Act and Communications Act provisions that locate exclusive jurisdiction in the court of appeals.  *Id.* at 3–4.

parties, and much of the relief sought cannot be obtained in the FCC proceeding.  Opp. at 12–15.

None of these arguments is persuasive.

B.  Plaintiffs' complaint, in substance, seeks the same relief on the same issues as SIC's
Petition for Reconsideration.

Plaintiffs seek compensatory damages and an order "directing NECA" to apply the Spare

Fiber Guidelines and include 100% of their lease costs in the pool.  Compl. at 31.  But the

particular NECA decision that prompted this lawsuit is no longer operative – it has been

effectively superseded by the Declaratory Ruling of the WCB.  Plaintiffs acknowledge – indeed,

they specifically allege – that NECA is required to follow the orders of the FCC.  *See id.* ¶¶ 68

("NECA is responsible for complying with . . . the orders and rules of the FCC . . . .") and 101

("NECA is obligated to implement the FCC's rule interpretations . . . .").  Thus, while plaintiffs

are asking this Court to order NECA to do one thing, the FCC, in the WCB's Declaratory Ruling,

has already ordered it to do something else.  That order is presently under review, and whether it

is upheld or overturned, NECA will be bound to comply with the FCC's ruling on

reconsideration. *See*  Pls.' Opp. at 14 ("A final ruling in the FCC Proceeding that NECA had

incorrectly applied the 'used and useful' doctrine to exclude 44% of SIC's Paniolo costs from the

Pool would result in SIC's reimbursement for those costs.").  And the FCC's ruling will never be

subject to review in this Court.

Plaintiffs cannot bypass the jurisdictional statute by asserting that their complaint seeks a

form of relief not available in the FCC proceeding.  The Supreme Court has held that "[l]itigants

may not evade the [exclusive jurisdiction] provisions by requesting the District Court to enjoin

action that is the outcome of the agency's order." *ITT World Commc'ns, Inc.*, 466 U.S. at 468.

In that case, the Court found that, "[i]n substance, the complaint filed in the District Court raised

the same issues and sought to enforce the same restrictions upon agency conduct as did the

petition for rulemaking that was denied by the FCC." *Id*. The Court therefore held that plaintiffs must obtain judicial review through the court of appeals and not the district court. *Id.*

In *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 395 (9th Cir. 1996), the plaintiffs, like the plaintiffs here, brought state law claims including breach of contract and breach of the covenant of good faith and fair dealing. Citing *ITT World Commc'ns, Inc.*, 466 U.S. at 468, the court held that when the complaint filed in the district court "raise[s] the same issues and seek[s] the same relief in substance as the declaratory ruling" of the FCC, the jurisdictional statutes require review in the courts of appeals. *Id.* at 399. The court dismissed all of the causes of action because they "would have required the district court to determine the substantive validity of a final FCC order reviewable under 47 U.S.C. § 402(a)," which was the exclusive jurisdiction of the court of appeals. *Id.* at 400.

Similarly, in *CE Design, Ltd. v. Prism Business Media, Inc*., 606 F.3d 443 (7th Cir. 2010), the court reviewed the substance of the complaint and determined that the plaintiff's lawsuit was a veiled challenge to the validity of an FCC rule. The Seventh Circuit upheld the district court's ruling that it lacked jurisdiction to consider the validity of the FCC rule. 606 F.3d at 448. The court found that when the defendant raised the FCC rule as a defense to the plaintiff's claim, "it inherently called upon the district court to enforce the FCC's rule." *Id.* "Because [the plaintiff] argued that the district court should ignore – or in other words, invalidate – the FCC's [rule] for purposes of this suit, the Hobbs Act's jurisdictional bar came into play." *Id.* [6] *See also United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458,

---

[6]     It is true that the parties in *CE Design* were expressly invoking an agency order, and plaintiffs here maintain they are seeking relief "on issues completely separate and distinct from the issues in the WCB Declaratory Ruling." Pls.' Opp. at 22–23. But as will be discussed in more detail in this section of the opinion, that argument does not withstand scrutiny, so the case cannot be distinguished on those grounds.

463 (8th Cir. 2000) ("Whichever way it is done, to ask the district court to decide whether the regulations are valid violates" the Hobbs Act).

Nor can plaintiffs evade jurisdictional requirements by invoking the Constitution or bringing an action under laws other than the Communications Act.  "A plaintiff may not escape an exclusive avenue of judicial review through artful pleading."  *American Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008); *see also Folden v. United States*, 379 F.3d 1344 (Fed. Cir. 2004) (holding that in deciding whether the jurisdictional provision applies to a breach of contract claim, the court "must look to the true nature of the plaintiffs' claims, not how plaintiffs characterize it.").  In *American Bird*, the Ninth Circuit rejected the plaintiff's characterization of its suit as a challenge to the agency's compliance with federal environmental laws rather than to the agency's ultimate order.  545 F.3d at 1193.  In *Any and All Radio Station Transmission Equipment*, the court held that the fact that the district court challenges were based in part on constitutional grounds did not permit the plaintiff to evade FCC and appellate jurisdiction.  207 F.3d at 463.  And in *Wilson*, the Ninth Circuit dismissed several state law causes of action because they required the court to determine the substantive validity of a final FCC order.  87 F.3d at 400.

So the question to be determined in ruling on the motion to dismiss is whether this case raises the same issues that are pending before the FCC and whether it calls into question the validity of an FCC order.  While plaintiffs contend that it does not, that position is so obviously belied by a comparison of the complaint and the Petition for Rehearing that it seems disingenuous.  The complaint seeks a judgment directing NECA to include all of SIC's Paniola lease costs in the Pool and directing it to apply the Spare Fiber Guidelines to SIC's request to

include its costs in the Pool.  Compl. at 31.  The Petition for Reconsideration requests precisely the same relief:

> [The Spare Fiber Rule] clearly applies to spare Paniolo fiber and application of that rule clearly provides that SIC is entitled to recover 100 percent of its spare fiber costs from the NECA Pool.  As a result, the Bureau must: (a) reconsider the cost recovery methodology adopted in the [Declaratory Ruling]; and (b) award SIC 100 percent cost recovery.

Petition for Reconsideration at 2.

Plaintiffs claim that this case and the FCC proceeding are different because the WCB Declaratory Ruling only concerned the application of the "used and useful" doctrine and did not address the superiority of the Spare Fiber Guidelines. *See, e.g.*, Pls.' Opp. at 13–14 ("The Complaint's allegations of unequal treatment were not the subject of the FCC Proceeding, as evidenced by the fact that the *WCB Declaratory Ruling* makes no reference to the Spare Fiber Guidelines whatsoever.").  But that is because plaintiffs did not *ask* the FCC to apply those guidelines in its initial request for review of the NECA decision, and they did not raise the issue of the applicability of a different set of guidelines until they petitioned for reconsideration.

As plaintiffs acknowledged during the hearing on the motion to dismiss, the pending petition squarely raises the issues before this Court. [7]  In both proceedings, plaintiffs argue that NECA was obliged to follow the Spare Fiber Guidelines, that it lacked any justification for treating SIC differently than other rural LECs, and that the FCC's approach was inconsistent with previous FCC orders that deemed the construction of SIC's network to be in the public

---

[7]     At oral argument, plaintiffs agreed that in the FCC petition, they complained that NECA had applied the wrong rules and the Spare Fiber Guidelines should have been used instead, that NECA had not followed its own rules and treated SIC differently than it had treated others before, and that NECA's actions were inconsistent with the FCC Study Area Waiver Rules that had supported the development of telecommunications infrastructure in Hawaii. *See* Tr. at 16–17.  And they conceded that same issues were raised in the complaint (Question: "Every single one of those things is in your complaint." Answer: "Correct.").

interest and authorized SIC to participate in the NECA Pool.  *Compare* Compl. ¶¶ 69–72, *with* Petition for Reconsideration at 2–8; *compare* Compl. ¶ 8, *with* Petition for Reconsideration at 12; *compare* Compl. ¶¶ 21–24, *with* Petition for Reconsideration at 17–19.

Before it filed this action, SIC availed itself of the right to seek FCC review of the NECA decision, and the WCB within the FCC has already ruled.  So, if the Court were to hear this case now, it would have to review the WCB Declaratory Ruling to decide whether it was appropriate for the agency to continue to apply the used and useful standard invoked by NECA as opposed to the Spare Fiber Guidelines.  It would have to compare the WCB's Declaratory Ruling with other FCC orders and rules.  That is exactly what the Petition for Reconsideration asks the FCC to do. In short, the gravamen of the complaint is plaintiffs' disagreement with an agency decision that is not yet final.  And once the FCC issues a final order, plaintiffs will have to take it up with the court of appeals.

C.  Plaintiffs' damages claims do not give this Court jurisdiction.

The fact that the complaint includes claims for damages does not change the character of the complaint or allow plaintiffs to bypass the administrative process.  *See Aguilar v. U.S. Immigration and Customs Enforcement*, 510 F.3d 1, 17 (1st Cir. 2007) ("Courts also have rebuffed litigants' attempts to bypass congressionally mandated exhaustion requirements by demanding remedies that the administrative procedures cannot grant.").

In *Computer Consulting & Network Design, Inc. v. Universal Serv. Admin. Co.*, 2008 WL 2435932, at *2 (W.D. Ky. June 12, 2008), the district court was asked to review a decision by another non-profit corporation designated by the FCC to administer one of its programs.  USAC was authorized to manage the delivery of discount internet services to the schools.  *Id.* at *1. The plaintiff, CCND, brought suit in the district court alleging that USAC sent false and

defamatory letters to school districts denying payment for its services, and that USAC interfered with its prospective contractual relations. *Id.*

The court rejected the plaintiff's argument that it should keep the case because the administrative process could not address tort claims for monetary damages. *Id.* at *6. It observed, "[w]hile this is true, administrative review does allow for a full and complete look at USAC's conduct. Thereafter, an aggrieved party may obtain judicial review by a Court of Appeals." *Id.* The court explained that if the court of appeals found that USAC acted according to proper FCC directives, the district court would be bound by that conclusion, and the plaintiff's claims would not be viable. And if USAC's conduct was wrongful or illegal, then the plaintiff would have a viable state law claim. But whether USAC acted with proper FCC directives is "a matter which is squarely within the realm of the FCC and the Courts of Appeals, not this Court." *Id.*

The case is instructive because both USAC and NECA are non-profit entities with delegated authority from the FCC and "[a]ny person aggrieved" by them "may" seek review from the FCC. *Id.* at *4, quoting 47 C.F.R. § 54.719(c).[8] And as the court concluded in *CCND*, in this case a claim for damages will only remain if the FCC reverses itself or if the court of appeals finds its ruling to be invalid. On the other hand, if the FCC approves NECA's action and its decision is affirmed by the court of appeals, no viable action for damages will survive.[9] Moreover, the court in *CCND* found that it did not have jurisdiction even though the plaintiff did

---

8       *See* 47 C.F.R. § 1.115 ("Any person aggrieved by any action taken pursuant to delegated authority may file an application requesting review of that action by the Commission.")

9       When the Court asked plaintiffs' counsel at the hearing on the motion how it could even deal with the plaintiffs' claims for damages unless and until the FCC had determined that NECA's refusal to pay SIC's costs was wrong, he replied, "that's a fair point." Tr. 15.

not have a pending proceeding before the FCC.[10]  Here, the case for dismissal is even stronger

since SIC elected to seek relief before the FCC in a proceeding governed by the Hobbs and

Communications Acts.  The fact that that proceeding is not yet final only solidifies the Court's

view that it lacks jurisdiction to hear the case.

     D.  <u>The presence of other parties in this dispute does not confer jurisdiction.</u>

     Neither the involvement of plaintiffs other than SIC, nor the absence of the FCC as a

defendant, gives this Court jurisdiction.  Courts have held that whether the plaintiffs challenge

the agency directly or indirectly, the jurisdictional bar exists.  In *CE Design*, the plaintiff sued a

private party whose "defense . . . inherently called upon the district court to enforce the FCC's

rule."  606 F.3d at 448.   The court held that the fact the plaintiff's "challenge to the FCC's []

defense arises in a dispute between private parties makes no difference – the Hobbs Act's

jurisdictional limitations are 'equally applicable whether [a party] wants to challenge the rule

directly . . . or indirectly, by suing someone who can be expected to set up the rule as a defense

in the suit.'".  *Id.*, quoting *City of Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.2d 116, 120 (7th

Cir. 1982).  *See also ITC-DeltaCom Commc'ns, Inc. v. BellSouth Telecommunications, Inc.*, 193

Fed. App'x 413, 416 (6th Cir. 2006) (When plaintiff argued it was not requesting relief from the

conduct of the FCC, but rather the conduct of BellSouth, the court found, "[t]his argument is also

---

10    The court held that the regulations providing for administrative review, while using
permissive language ("may"), were mandatory and that the plaintiff must first exhaust their
remedies through the FCC.  2008 WL 2435932, at *6.  The court found that the plaintiff's claims
"all hinge upon the allegation that USAC's conduct in administering the E-Rate Program was
'improper, wrongful, and reckless.'"  *Id.*  Because USAC contended that the FCC issued orders
to USAC approving and requiring the conduct about which the plaintiff complained, the court
found that to address the plaintiff's claims it would "be necessary to determine the propriety of
the actions taken by USAC in the administration of the program."  *Id.*  The court held that USAC
and the FCC should be given the opportunity to pass on the issues underlying the plaintiff's
claims prior to judicial review.  Because the plaintiff had not exhausted its administrative
remedies, the court dismissed the complaint.

without merit because no matter how Plaintiff attempts to fashion the argument, the gist of its complaint is that it is seeking to divest the FCC of jurisdiction to rule on BellSouth's petition, which this Court has already held cannot be done."). Thus, it makes no difference that plaintiffs brought suit against NECA instead of the FCC; the operative decision by which NECA must abide is the WCB's Declaratory Ruling, which approved both NECA's use of the "used and useful" standard and its decision not to include 100% of the lease costs in the Pool.

The fact that Gold Ivory and employees of SIC joined SIC as plaintiffs in the suit does not confer jurisdiction on this Court either. Like SIC's claims, both the individual plaintiffs' claims and Gold Ivory's tortious interference claim are entirely dependent on a finding of whether the FCC's utilization of the "used and useful" methodology was improper – which is the very question pending reconsideration. Since the claims brought by all of the plaintiffs essentially call upon the Court to ignore or set aside an agency ruling it is not authorized to review at all, and to do that before the ruling is even final, this Court lacks jurisdiction to hear the entire case. *See City of Peoria*, 690 F.2d at 120 (holding that the district court does not have jurisdiction when plaintiffs seek relief that "is in effect an action to set aside the [FCC] rule").

Plaintiffs argue that this Court should not dismiss an action in favor of an administrative proceeding "when doing so would effectively 'foreclose all meaningful judicial review'" of their claims. Pls.' Opp. at 21, quoting *Aguilar*, 510 F.3d at 12. But there will be meaningful judicial review of the claims. The court of appeals will review a decision made by the FCC if either party to that proceeding chooses to appeal. And if there are viable claims to be brought once the FCC and the court of appeals have ruled, there will be no bar to bringing them then.

**IV.     The Court Would Dismiss this Case Under Primary Jurisdiction Even if it Had Jurisdiction**

Even if the Court did have jurisdiction and it was permitted to hear the case, the Court would decline to do so and dismiss the case because the FCC has primary jurisdiction.

A.   The primary jurisdiction doctrine would apply to this case.

The primary jurisdiction doctrine is invoked when a court has jurisdiction but the case will require resolution of issues that Congress has placed in the hands of regulating agencies. *Himmelman v. MCI Commc'ns Corp.*, 104 F. Supp. 2d 1, 3 (D.D.C. 2000).  The doctrine "rests both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently), and on the advantages of allowing an agency to apply its expert judgment."  *Allnet*, 965 F.2d at 1120 (internal citations omitted).  Courts in this district have applied four factors to determine whether to apply the primary jurisdiction doctrine: (1) whether the question at issue is within the conventional experience of judges; (2) whether the question lies peculiarly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.  *Himmelman*, 104 F. Supp. 2d at 4.  *See also United States v. Philip Morris USA Inc.*, --- F. Supp. 2d ---, 2011 WL 2144571, *8 (D.D.C. 2011).

All of the factors strongly favor applying the primary jurisdiction doctrine in this case. The first two factors recognize that courts should defer to a specialized agency in cases that require administrative expertise and raise "issues of fact not within the conventional experience of judges."  *Himmelman*, 104 F. Supp. 2d at 4, quoting *Far East Conference v. United States*, 342 U.S. 570, 574 (1952).  "The courts have not hesitated, in appropriate cases, to defer to the expertise of administrative agencies such as the FCC."  *Id.* (collecting cases); *see also Allnet*, 965

F.2d at 1120 ("[C]ourts have frequently invoked primary jurisdiction in cases involving tariff interpretations.").

Here, whether NECA and the FCC should have applied the Spare Fiber Guidelines as opposed to the the "used and useful" doctrine when considering the Paniola lease costs is a question best left to the FCC, the agency that promulgated those guidelines and delegated authority to NECA to apply them. *See Allnet*, 965 F.2d at 1123 ("Allnet's core claim is that NECA's tariff violates the Commission's regulations, a matter squarely within its expertise."). Plaintiffs have pointed out that the Spare Fiber Guidelines were created by NECA, are based upon FCC rules, and are not available in public database or susceptible to public research. Petition for Reconsideraton at iii. They argue that the WCB's ruling was inconsistent with other FCC orders, so it is clear from plaintiffs' own contentions that the case presents matters better resolved by the FCC in the first instance. Moreover, the determination of what percentage of the lease costs to include in the pool will implicate the FCC's technical expertise and its policy judgments. *See Total Telecommunications Servs., Inc. v. AT&T*, 919 F. Supp. 472, 478 (D.D.C. 1996) ("The powers granted to the FCC are a reflection of Congress' intention that one governmental entity be vested with the responsibility of developing, coordinating and enforcing a uniform telecommunications policy.").

Looking at the third and fourth factors related to primary jurisdiction, application to the agency has already been made, and there would be a significant risk of inconsistent rulings if this Court were to exercise jurisdiction over the case now. The NECA decision at the heart of the complaint has been rendered moot by the WCB Declaratory Ruling. Plaintiffs are asking this Court to order relief that was denied in the Declaratory Ruling, on the basis of the very arguments that are currently before the FCC. So if this Court were to rule, there is a substantial

risk that its decision will conflict with the FCC decision on reconsideration, or with a decision by the court of appeals if the final agency order is ultimately appealed.  Thus, an evaluation of all four factors militates in favor of a finding that the FCC has primary jurisdiction.

B.   The Court would dismiss, rather than stay, the action.

The primary jurisdiction doctrine allows a district court to dismiss, or stay, an action over which it has subject-matter jurisdiction. *Himmelman*, 104 F. Supp. 2d at 7.   The Court's discretion to dismiss is appropriately exercised only where "the parties would not be unfairly disadvantaged . . . ." *Id.* at 8, quoting *Reiter v. Cooper,* 507 U.S. 258, 268 (1993).  Plaintiffs argue that the FCC proceeding "will not resolve the claims at issue in this action, or encompass the vast majority of damages Gold Ivory and SIC seek in this action."  Pls.' Opp. at 31.  They argue, then, that if the Court applies the primary jurisdiction doctrine, it should stay, and not dismiss, their claims.

In *Total Telecommunications*, 919 F. Supp. at 484, the court applied the primary jurisdiction doctrine and dismissed several common law claims, including claims for breach of contract intentional interference.  The court found that those claims "are fundamentally premised on the central claims; and are thus incidental in nature."  *Id.* at 483.  Similarly here, all of the claims are fundamentally premised on the same central claim about whether the Spare Fiber Guidelines applied to the Paniola lease costs and the damages claims are incidental to the FCC's allegedly wrongful decision.[11]

---

11     Plaintiffs rely on *American Ass'n of Cruise Passengers v. Cunard Line, Ltd.*, 31 F.3d 1184 (D.C. Cir. 1994) to argue that the doctrine is inapplicable, but the opinion is distinguishable.  *AACP* was an antitrust case, in which a travel agency sued several cruise lines and trade associations.  There were claims related to certain routes (between the U.S. and foreign ports) that should have been brought before the Federal Maritime Commission, the agency that regulated common carriers.  But the complaint also raised claims related to purely foreign routes, where the lines were not acting as common carriers, and therefore the agency had no authority.

In *Allnet*, a carrier sued NECA, seeking a declaratory judgment that it was not liable for particular charges. 965 F.2d at 1119. The district court had subject matter jurisdiction because the carrier brought its case there in the first instance. *Id.* at 1119–20. The D.C. Circuit held that the primary jurisdiction doctrine applied because there was a potential conflict between an FCC staff letter and an FCC order as to whether the access tariffs in question were valid. *Id.* at 1120. But it decided not to hold the court case in abeyance; it noted that the parties would not be prejudiced by a dismissal because the carrier had agreed to waive its statute of limitations defense to any future claims brought by NECA. *Id.* at 1123. Here, NECA has agreed to waive any statute of limitations defenses to plaintiffs' claims if they are dismissed now under the doctrine of primary jurisdiction. Reply at 22. This means that if the FCC proceeding is ultimately resolved in a manner that would give the plaintiffs a viable cause of action, they will not have been prejudiced by a dismissal. Therefore, even if the Court did have jurisdiction over

---

The court held that the district court should not have dismissed the non-common carrier claims because the primary jurisdiction doctrine was inapplicable to them, and that it was required to exercise its jurisdiction. By contrast, here, all of the claims implicate the FCC's primary jurisdiction. *See Total Telecomms. Svcs., Inc. v. AT&T*, 919 F. Supp. 472, 484 n.17 (D.D.C. 1996) (differentiating *Cruise Passengers* on the same grounds).

Plaintiffs also rely on *APCC Services, Inc. v. Worldcom, Inc.*, 305 F. Supp. 2d 1 (D.D.C. 2001). In that case, pay phone service providers sought compensation from three phone carriers for calls made from pay phones – but charged to the carriers – over a several year period. Plaintiffs sued under a statute that specifically permits suits to be brought in court or before the FCC: 47 U.S.C. § 206 gives rise to a cause of action for damages and attorneys' fees against common carriers subject to the FCC. The court found that the actions did not involve the resolution of issues within the special competence of the FCC; among other factors, the court would not need to determine a rate at issue, and the FCC orders were sufficiently clear. *Id.* That reasoning does not apply in this case, where the interpretation and application of multiple FCC doctrines and orders is at issue.

any of plaintiffs' claims, it would dismiss those claims in deference to the FCC's primary jurisdiction.[12]

### V.    Conclusion

For the reasons described above, and after thorough consideration of the motion, the opposition, and the entire record in this case, the Court will grant defendant NECA's motion to dismiss the complaint for lack of jurisdiction.  Even if this Court did have jurisdiction over any of plaintiffs' claims, the Court would dismiss those claims under the doctrine of primary jurisdiction.  Accordingly, the Court will dismiss this action without prejudice to the bringing of future claims, should they be viable, after the FCC proceedings, and any appeals, are final.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE: July 29, 2011

---

12      Plaintiffs also argue that they will be prejudiced by dismissal or a stay of this case because they will be forced into bankruptcy if they do not obtain relief within six to twelve months.  Pls.' Opp. at 23.  But they offer no support for their contention that the FCC process could drag on indefinitely.  Moreover, the FCC has already weighed these issues in depth, issued the Declaratory Ruling on September 29, 2010, and has had the Petition for Reconsideration pending since October 29, 2010.  So it is not obvious that this Court would reach the merits first.